

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida
Orlando Division

ALLSTATE INDEMNITY COMPANY,
ALLSTATE INSURANCE COMPANY,
ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

    Plaintiffs,

                                          Civil Action No.

v.

FLORIDA REHAB & INJURY CENTERS LONGWOOD, INC.,
CESAR NABONG ABIERA, JR., M.D.,
JULIE BETH HEMPHILL, ARNP,
JAMES ANTONIO BIANCHI,
WILLIAM BLAIN DRAWDY,
FLORIDA MEDICAL AND REHAB CONSULTANTS, INC.
f/k/a WBD, INC.,
ROBIN LYN MINGORANCE, and
D.R. BILLING & TRANSCRIPTION, INC.,
    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs: ALLSTATE INDEMNITY COMPANY; ALLSTATE INSURANCE COMPANY; ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY (hereinafter collectively referred to as "ALLSTATE.") hereby sue Defendants: FLORIDA REHAB & INJURY CENTERS LONGWOOD, INC.; CESAR NABONG ABIERA, JR., M.D.; JULIE BETH HEMPHILL, ARNP; JAMES ANTONIO BIANCHI; WILLIAM BLAIN DRAWDY;

FLORIDA MEDICAL AND REHAB CONSULTANTS, INC. f/k/a WBD, INC., ROBIN LYN MINGORANCE, and D.R. BILLING & TRANSCRIPTION, INC.   ALLSTATE alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.   This action involves a conspiracy to commit fraud by the Defendants to unlawfully obtain from ALLSTATE Personal Injury Protection ("PIP") insurance benefits for services and treatment purportedly rendered to patients at FLORIDA REHAB & INJURY CENTERS LONGWOOD, INC. ("FL REHAB") located in Longwood, Seminole County, Florida, with regard to the claims identified in "Exhibit A".

2.   With regard to the claims identified in "Exhibit A," the billing submitted was unlawful because FL REHAB intentionally or negligently violated several important civil, criminal and/or administrative laws, including, but not limited to, Florida Statute §§ 627.736, 400.990, 400.9905, 400.9935, 408.812, and 817.234.

3.   Defendants conspired and schemed to unlawfully obtain insurance proceeds from ALLSTATE through intentional concealments and/or misrepresentations to ALLSTATE and/or regulating agencies of the State of Florida.   As a result, ALLSTATE issued payments for some of the bills submitted and seeks reimbursement for those payments.   For bills submitted that ALLSTATE did not pay, ALLSTATE seeks a determination that the bills are not properly payable under Florida's No-Fault PIP Statute and the applicable contracts/policies of insurance.   ALLSTATE also seeks punitive damages as a result of Defendants intentional and gross misconduct.   Through this Complaint, ALLSTATE seeks recovery against the individual and corporate

Defendants involved in this scheme, with regard to the claims identified in "Exhibit A."

4. By requiring a clinic's services to be "lawfully" rendered in order to be properly payable, Florida's No-Fault PIP Statute and the Health Care Clinic Act were both designed to reduce PIP fraud and prevent significant cost and harm to consumers. Florida Statute § 627.732(11) defines "lawfully" as being "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

5. FL REHAB did not operate lawfully because during the applicable period of time of the claims identified in "Exhibit A", the clinic either was not eligible to submit billing for payment under PIP and/or the clinic was not licensed by the Florida Agency for Health Care Administration ("AHCA") and did not qualify for an exemption from licensure pursuant to Florida Statute § 400.9905(4) which rendered the services not lawfully rendered and not compensable.

6. Further, FL REHAB did not operate lawfully because the owner(s) of FL REHAB did not adequately supervise the business activities of the clinic, during the timeframe of the claims identified in "Exhibit A."  As a result, improper/unlawful billing and unlicensed activity occurred within the clinic.

7. FL REHAB's unlawful billing renders the bills referenced in "Exhibit A" not compensable under Florida's PIP Statute.

8.     ALLSTATE paid in excess of $75,000 in PIP benefits to FL REHAB.  The chart attached hereto as "Exhibit A" identifies the patients for which ALLSTATE paid PIP benefits in the amount of $919,604.68 to FL REHAB for bills that were not lawful.

9.     Based upon the Defendants' affirmative misrepresentations and/or intentional acts of concealment, which are set forth below, ALLSTATE did not discover, and could not have reasonably discovered, the acts giving rise to the scheme and damages attributable to fraud and/or misrepresentations until late in 2014 and early in 2015, which was shortly before the filing of this Complaint.

10.    This action asserts claims for common law fraud, conspiracy to defraud, negligent misrepresentation and unjust enrichment to recover actual damages that exceed the sum or value of seventy five thousand dollars ($75,000) for PIP benefits paid pursuant to the unlawful bills submitted by FL REHAB.  This action also seeks a declaratory judgment, pursuant to Florida Statute Chapter 86, declaring any pending bills submitted by FL REHAB during the pendency of this action to be unlawful such that ALLSTATE is not responsible for issuing payment for same.  Further, ALLSTATE also seeks punitive damages as a result of Defendants intentional and gross misconduct.

## JURISDICTION, VENUE & PARTIES

### Jurisdiction

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 due to diverse citizenship of the parties and due to the amount in controversy exceeding the

sum or value of seventy five thousand dollars ($75,000), exclusive of interest, attorneys' fees and costs.

## Venue

12. Venue is proper pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Seminole County, which is in this judicial district and several Defendants were located and/or resided in and/or doing business in this judicial district, during the relevant time periods.

## Plaintiffs

13. ALLSTATE INDEMNITY COMPANY is a foreign corporation organized under the laws of the state of Illinois and has its principal place of business in Northbrook, Illinois. Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Illinois for purposes of the District Court's diversity jurisdiction. All times pertinent to this Complaint, it was authorized to issue private passenger automobile insurance policies in Florida.

14. ALLSTATE INSURANCE COMPANY is a foreign corporation organized under the laws of the state of Illinois and has its principal place of business in Northbrook, Illinois. Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Illinois for purposes of the District Court's diversity jurisdiction. All times pertinent to this Complaint, it was authorized to issue private passenger automobile insurance policies in Florida.

15. ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY is a foreign corporation organized under the laws of the state of Illinois and has its principal place

of business in Northbrook, Illinois.  Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Illinois for purposes of the District Court's diversity jurisdiction.  All times pertinent to this Complaint, it was authorized to issue private passenger automobile insurance policies in Florida.

16.  ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY is a foreign corporation organized under the laws of the state of Illinois and has its principal place of business in Northbrook, Illinois.  Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Illinois for purposes of the District Court's diversity jurisdiction.  All times pertinent to this Complaint, it was authorized to issue private passenger automobile insurance policies in Florida.

17.  ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY is a foreign corporation organized under the laws of the state of Illinois and has its principal place of business in Northbrook, Illinois.  Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Illinois for purposes of the District Court's diversity jurisdiction.  All times pertinent to this Complaint, it was authorized to issue private passenger automobile insurance policies in Florida.

**Defendants**

18.  FL REHAB is a Florida corporation.  During pertinent times, FL REHAB was primarily an auto-accident healthcare clinic located at 2639 West State Road 434, Longwood, Seminole County, Florida and was incorporated on October 2, 2009. At the time of incorporation, JULIE BETH HEMPHILL, ARNP ("HEMPHILL") was listed as the President and Incorporator.   ROBIN LYN MINGORANCE

("MINGORANCE") was listed as Registered Agent.   Effective October 16, 2014, HEMPHILL was removed as President and CESAR NABONG ABIERA, JR., M.D. ("ABIERA") was added as President.

19.   ABIERA is a citizen of Florida who resides in Volusia County, Florida.  During the time period pertinent to this Complaint, ABIERA worked in Seminole County, Florida and Volusia County, Florida.  Many actions and omissions by ABIERA giving rise to this claim occurred in Seminole County, Florida.

20.   HEMPHILL is a citizen of Florida who resides in Orange County, Florida.  Many actions and omissions by HEMPHILL giving rise to this claim occurred in Seminole County, Florida.

21.   JAMES ANTONIO BIANCHI ("BIANCHI") is a citizen of Florida who resides in Orange County, Florida and works in Seminole County, Florida.

22.   WILLIAM BLAIN DRAWDY ("DRAWDY") is a citizen of Florida who resides in Seminole County, Florida.

23.   FLORIDA MEDICAL AND REHAB CONSULTANTS, INC. f/k/a WBD, INC. ("WBD, INC.") is a Florida Corporation organized under the laws of the State of Florida and has its principal place of business in Seminole County, Florida.  Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Florida for purposes of the District Court's diversity jurisdiction.

24.   MINGORANCE is a citizen of Florida who resides in Orange County, Florida.  Many actions and omissions by MINGORANCE giving rise to this claim occurred in Seminole County, Florida.

25.  D.R. BILLING & TRANSCRIPTION, INC. ("D.R. BILLING") is a Florida corporation organized under the laws of the state of Florida and has its principal place of business in Orange County, Florida. Thus, by operation of 28 U.S.C. § 1332, it was and is a citizen of Florida for purposes of the District Court's diversity jurisdiction.

**ALLEGATIONS COMMON TO CONSPIRACY & TO ALL COUNTS**

26.  All conditions precedent to the bringing of this cause of action have been met or waived.

27.  ALLSTATE issued automobile insurance policies, which provided PIP benefits pursuant to Florida Statute § 627.736 to each of the patients listed in the attached "Exhibit A" (hereinafter referred to as "INSUREDS").

28.  Each of ALLSTATE's INSUREDS were reportedly involved in motor vehicle accidents.

29.  Pursuant to Florida's PIP Law, ALLSTATE is contractually obligated to indemnify its insured with PIP benefits or is obligated to pay 80% of all lawful bills for services/treatment that is lawfully rendered, reasonable, medically necessary and related to the subject accidents. The maximum amount of the PIP benefits required is dependent upon which version of Florida PIP law applied to the loss, and other facts specific to the claim.

30.  ALLSTATE's INSUREDS sought treatment from FL REHAB and FL REHAB obtained irrevocable assignments of PIP benefits from the INSUREDS.

31.  FL REHAB, through the assistance of MINGORANCE and D.R. BILLING prepared and submitted unlawful billing to ALLSTATE for services allegedly provided to

ALLSTATE's INSUREDS.

32. Each of the Defendants played a role in the unlawful billing and conspiracy to commit fraud. Each Defendant acted both individually and in concert, with each needing others to successfully carry out and profit from the unlawful PIP scheme. Defendants made overt acts in furtherance of the scheme and ALLSTATE suffered damages as a result of the acts performed pursuant to the conspiracy.

33. Defendants' actions resulted in the depletion of the limited PIP benefits available to ALLSTATE's INSUREDS. Consequently, some of ALLSTATE's INSUREDS have been left without any available PIP benefits to pay for necessary medical care and treatment.

34. HEMPHILL is a Florida licensed Advanced Registered Nurse Practitioner who claimed to wholly owned FL REHAB from the time FL REHAB was created on October 2, 2009 until FL REHAB was allegedly purchased by ABIERA on October 16, 2014.

35. With regard to bills submitted by FL REHAB for dates of service October 2, 2009 through October 15, 2014, HEMPHILL claimed to wholly own FL REHAB. During this time, FL REHAB did not have a Health Care Clinic License issued by AHCA. Instead, FL REHAB operated under a self-declared exemption from AHCA licensure by HEMPHILL claiming to wholly owned FL REHAB. However, HEMPHILL did not wholly own FL REHAB during that time. While HEMPHILL and her medical credentials were used to mask the identity of the true owners, individuals/entities other than HEMPHILL enjoyed the major indicia of ownership as to FL REHAB, including

management, supervision, compensation, control, as well as enjoyment of profits. Such individuals/entities include BIANCHI, DRAWDY/WBD, INC. and MINGORANCE/D.R. BILLING. HEMPHILL merely rented out her medical credentials to FL REHAB to allow FL REHAB to submit billing to PIP carriers such as ALLSTATE with the intent to maximize profits at the expense of the patients and the patients' insurance companies, including ALLSTATE. By allowing HEMPHILL to present herself as the "paper" owner of FL REHAB, HEMPHILL enabled them to collect vast amounts of money from ALLSTATE. Additionally, HEMPHILL did not adequately "supervise the business activities" of FL REHAB and as a result, unlawful activity occurred within the clinic. Thus, FL REHAB's billing was unlawful and HEMPHILL, BIANCHI, DRAWDY/WBD, INC., and MINGORANCE/D.R. BILLING were co-conspirators in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

36.    Additionally, with regard to bills submitted by FL REHAB for dates of service January 1, 2013 through October 15, 2014, HEMPHILL claimed to wholly own FL REHAB. Effective January 1, 2013, pursuant to Florida Statute §627.736, an ARNP-owned clinic was not eligible to submit bills to an insurer for reimbursement under PIP coverage unless the clinic has an AHCA license. Further, Florida Statute § 400.9905(n) also stated this requirement by stating "[n]otwithstanding this subsection, an entity shall be deemed a clinic and must be licensed under this part in order to receive reimbursement under the Florida Motor Vehicle No-Fault Law... unless exempted under s. 627.736(5)(h)." FL REHAB did not qualify for an exemption

under Florida Statute §637.736(5)(h).   Despite this, from January 1, 2013 until October 15, 2014, FL REHAB continued to submit bills to ALLSTATE for payment under PIP even though the clinic did not have an AHCA license and this conduct was prohibited by Florida's PIP statute.   Thus, FL REHAB's billing was unlawful and HEMPHILL was a co-conspirator in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

37.    ABIERA is a Florida licensed Medical Doctor.   FL REHAB, MINGORANCE/D.R. BILLING, and HEMPHILL made material representations to ALLSTATE and/or its representatives that ABIERA purchased FL REHAB and wholly owned it as of October 16, 2014. FL REHAB maintained that ABIERA continued to wholly own FL REHAB through and including March 9, 2015, which is the last date of service at issue in this litigation.   However, ABIERA did not wholly own FL REHAB during that time.   While ABIERA and his medical credentials were used to mask the identity of the true owners, individuals/entities other than ABIERA enjoyed the major indicia of ownership as to FL REHAB, including management, supervision, compensation, control, as well as enjoyment of profits.   Such individuals/entities include BIANCHI, DRAWDY/WBD, INC. and MINGORANCE/D.R. BILLING.   ABIERA merely rented out his medical credentials to FL REHAB to allow FL REHAB to submit billing to PIP carriers such as ALLSTATE with the intent to maximize profits at the expense of the patients and the patients' insurance companies, including ALLSTATE. By allowing ABIERA to present himself as the "paper" owner of FL REHAB, ABIERA enabled them to collect vast amounts of money from ALLSTATE.

Additionally, ABIERA did not adequately "supervise the business activities" of FL REHAB and as a result, unlawful activity occurred within the clinic. Thus, FL REHAB's billing was unlawful and ABIERA, BIANCHI, DRAWDY/WBD, INC., and MINGORANCE/D.R. BILLING were co-conspirators in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

38.  Should ALLSTATE obtain evidence that FL REHAB submitted unlawful billing for dates of service after March 9, 2015, ALLSTATE reserves the right to amend this Complaint to include allegations and seek damages and relief pertaining to those additional dates of service.

39.  BIANCHI is believed to have had an undisclosed ownership interest in FL REHAB, during time periods relevant to this Complaint. BIANCHI did not have a Florida health care license that would qualify for a clinic exemption pursuant to Florida Statute §400.9905(4); thus, he could not have an ownership interest in FL REHAB without FL REHAB having an AHCA clinic license. Since FL REHAB did not have an AHCA clinic license, BIANCHI's ownership interest in FL REHAB renders all services and bills from FL REHAB unlawful and not payable. BIANCHI actively engaged in the scheme to defraud by serving as an undisclosed owner of the unlicensed clinic, FL REHAB, when pursuant to Florida Statute § 408.812(3), it is unlawful for any person or entity to own, operate, or maintain an unlicensed provider. Therefore, BIANCHI was a co-conspirator in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

40.     DRAWDY is the sole officer/director of WBD, INC. DRAWDY, individually, and/or through his company, WBD, INC. is believed to have had an undisclosed ownership interest in FL REHAB, during time periods relevant to this Complaint. DRAWDY did not have a Florida health care license that would qualify for a clinic exemption pursuant to Florida Statute §400.9905(4); thus, he could not have an ownership interest in FL REHAB without FL REHAB having an AHCA clinic license. Since FL REHAB did not have an AHCA clinic license, DRAWDY's ownership interest in FL REHAB renders all services and bills from FL REHAB unlawful and not payable. DRAWDY actively engaged in the scheme to defraud by serving as an undisclosed owner of the unlicensed clinic, FL REHAB, when pursuant to Florida Statute § 408.812(3), it is unlawful for any person or entity to own, operate, or maintain an unlicensed provider.  Further, by offering or advertising the services of an unlicensed clinic, DRAWDY/WBD, INC. violated Florida Statute § 408.812(1).    Therefore, DRAWDY and WBD, INC. were co-conspirators in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

41.     MINGORANGE is the President and sole officer and/or owner of D.R. BILLING. MINGORANGE, individually, and/or through her company, D.R. BILLING: prepared and submitted FL REHAB's unlawful billing to ALLSTATE; and/or shared in the profits of FL REHAB; and/or engaged in acts, made false oral or written statements and/or participated in material omissions to ALLSTATE. Pursuant to Florida Statute § 408.812(3), it is unlawful for any person or entity to own, operate, or maintain an unlicensed provider.   Therefore, MINGORANCE and D.R. BILLING were co-

conspirators in the Defendants' fraudulent scheme to unlawfully obtain PIP benefits from ALLSTATE.

42.     FL REHAB submitted bills to ALLSTATE by sending HCFAs/CMS-1500 forms to ALLSTATE in the ordinary course of business through the United States Postal Service.

43.     The claims and charges submitted by FL REHAB listed in "Exhibit A" were submitted on HCFAs/CMS-1500 forms and were for services/treatments that were not lawfully billed, pursuant to Florida's PIP Statute.

44.     Florida Statute § 627.736(5)(d) specifically prohibits this conduct and states "[a] statement of medical services may not include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services... an insurer is not considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph." Thus, ALLSTATE was not on notice of a covered loss.

45.     Since FL REHAB's bills that were submitted to ALLSTATE are not properly payable under Florida's PIP law, neither ALLSTATE nor its INSUREDS are responsible for payment.

**Florida's Health Care Clinic Act (Fla. Stat. Chapter 400, Part X)**

46.     Florida Statute Chapter 400, Part X is titled Florida's "Health Care Clinic Act" ("The Act"). The Act details the licensing requirements for health care clinics to lawfully operate in Florida.

47.     The Act was implemented mainly to require clinics with unlicensed, non-physician owners to obtain a clinic license and be subject to a background screening and inspections. The Act states "[t]he Legislature finds that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers. The purpose of this part is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration." *Fla. Stat.* § 400.990(2) (2008, 2013)

48.     Pursuant to The Act, a "clinic" is as an entity where "health care services are provided to individuals and which tenders charges for reimbursement for such services." *Fla. Stat.* § 400.9905(4) (2008, 2013)

49.     In order to lawfully operate, each health care entity falling under the definition of a "clinic" under The Act is required to obtain a license from the Agency for Health Care Administration ("AHCA"), unless one of a few limited exceptions defined by The Act applies. This licensure requires serves to protect the public because licensed clinics have to have a medical director and follow strict standards for reporting of: level two background screening of employees; identification of persons serving in key roles in the clinic to include the CFO; reporting of changes in ownership; unannounced clinic inspections; listing of services to be provided; and, proof of financial ability to operate. Statements made in the licensure application process are made under oath and subject to penalty of perjury.

50.     One exception allowing a clinic to operate without ACHA licensure is for a clinic with a licensed health care practitioner of certain licensure who:  (1) wholly owns the

clinic; (2) is supervising the business activities; and (3) is legally responsible for the clinic's compliance with all federal and state laws. *See Fla. Stat.* § 400.9905(4) (2008, 2013). No other licensure exception applies to the instant action.

51.　Florida Statute § 400.9905(n) specifically states, than even entities that do not fall within the definition of a "clinic" shall be deemed a clinic and must be licensed by AHCA in order to receive reimbursement under the Florida Motor Vehicle No-Fault Law.　The only exception is for entities exempted under Florida Statute § 627.736(5)(h), which FL REHAB was not from January 1, 2013 until October 15, 2016.

52.　The consequences of a clinic operating without the appropriate license or exemption, are delineated within Florida Statute § 400.9935(3), which provides that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable."

53.　Realizing the significant potential public harm from unlicensed activity in the health care context, Florida's legislature enacted Florida Statute § 400.9935(4) which makes it a third degree felony for any person to establish, operate, or manage an unlicensed clinic otherwise required to be licensed. *See also Fla Stat.* § 408.812(2)

54.　Further, a person or entity may not offer or advertise services that require licensure as defined by this part, authorizing statutes, or applicable rules to the public without obtaining a valid license from the agency. *See Fla. Stat.* § 408.812(1)

**Florida Law Relating to PIP**

55.  Florida Statute § 627.736(1)(a) (2008, 2013) mandates that insurers are only responsible for payment for services that are lawfully provided by a clinic wholly owned by a physician of specific health care licensure, or by a clinic with a Medical Director/AHCA licensure.

56.  Florida Statute § 627.736(5)(d) prohibits unlawful billing by unlicensed clinics and states "[a] statement of medical services may not include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services."

57.  Florida Statute §627.736(5)(b)(1) states insurers are not required to pay claims where a person knowingly submits false or misleading statements relating to the claim or charges.

58.  Florida's legislature has defined "entity wholly owned" as follows:

> (17) "Entity wholly owned" means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. *Fla. Stat.* § 627.732(17) (2012).

59.     Where clinics operate without appropriate AHCA licensure or a recognized exemption, the legal consequence is that such treatment was not "lawfully rendered." *See Fla. Stat.* § 627.736(5)(a) (2008, 2013).

60.     For purposes of this litigation, Florida Statute § 627.732(11), defines "lawfully" as being "in substantial compliance with **all** relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." *Fla. Stat.* § 627.732(11) (2008, 2013) (emphasis added).

61.     Pursuant to Florida Statute § 627.736(5)(b)(1)(b) (2008 and 2013), neither an insured nor an insurer is obligated to pay for medical services that were not lawful at the time they were rendered.

62.     Effective January 1, 2013, health care entities wholly owned by advanced registered nurse practitioners, are not eligible to submit billing to insurers for reimbursement under PIP unless the entity has an AHCA license. *See Fla. Stat.* §627.736(5)(h)

**False and Fraudulent Insurance Claims – Florida Statute § 817.234**

63.     Florida Statute § 817.234 (2008, 2013) makes it unlawful for anyone to present, cause to be presented, prepare or make, any written or oral statement in connection with any claim for payment or other benefit to pursuant to an insurance policy if such statement contains any false, incomplete or misleading information concerning any fact or thing material to the claim.  Specifically, it provides as follows in pertinent part:

> (1)(a)  A person commits insurance fraud punishable as provided in subsection (11) if that person, with the intent to injure, defraud, or deceive any insurer:

1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy ... knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim;

2. Prepares or makes any written or oral statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy ... knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim;

*****

4. Knowingly presents, causes to be presented, or prepares or makes with knowledge or belief that it will be presented to any insurer a claim for payment or other benefit under a personal injury protection insurance policy if the person knows that the payee knowingly submitted a false, misleading, or fraudulent application or other document when applying for licensure as a health care clinic, seeking an exemption from licensure as a health care clinic, or demonstrating compliance with part X of chapter 400.

**Consequences for Violations of the Above Florida Statutes**

64. Florida Statute § 400.9935(3) (2008, 2013) expressly states civil penalties for violations of the Health Care Clinic Act in that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable."

65.   Florida's PIP Statute provides that if a clinic is not lawfully operating or bills are not lawful, bills submitted by the clinic are not payable.

66.   ALLSTATE was damaged as a result of the above-described acts performed by Defendants pursuant to the conspiracy in that ALLSTATE paid bills submitted by the FL REHAB in an amount in excess of $75,000.

67.   Therefore, Defendants operated under a civil conspiracy to defraud ALLSTATE and other insurance companies, by submitting unlawful bills to maximize the profits of the individuals in control of FL REHAB, while avoiding the oversight and scrutiny of AHCA.

## COUNT I – COMMON LAW FRAUD
### (AGAINST ALL DEFENDANTS)

68.   ALLSTATE re-affirms and re-alleges paragraphs 1-67 as if fully set forth herein.

69.   With regard to the claims identified in "Exhibit A," Defendants, individually or by and through their agents or representatives, intentionally and knowingly made false and fraudulent statements of material fact to ALLSTATE by presenting, directing to be presented and/or accepting the benefits either directly or indirectly from, unlawful billing/charges.  The billing/charges where unlawful due to intentional violations of civil, criminal and administrative statues and rules relating to the provision of medical services, to wit: §§ 400.990, 400.9905, 400.9935, 408.812, 627.736 and 817.234.

70.   Specifically, Defendants, individually or by and through their agents or representatives, actively misrepresented, acquiesced, or ratified the misrepresentation, that HEMPHILL was the whole owner of FL REHAB from October 2, 2009 until

October 15, 2014, when, in fact, she was not. Defendants concealed the true owners of FL REHAB.

71.    Defendants, individually or by and through their agents or representatives, actively misrepresented, acquiesced, or ratified the misrepresentation, that ABIERA was the whole owner of FL REHAB from October 16, 2014 until March 9, 2015, when, in fact, he was not. Defendants concealed the true owners of FL REHAB.

72.    With respect to dates of service from October 2, 2009 through October 15, 2014 referenced in "Exhibit A", FL REHAB was not operating lawfully because HEMPHILL failed to supervise the business activities of FL REHAB in violation of the Health Care Clinic Act.

73.    With respect to dates of service from October 16, 2014 through March 9, 2015 referenced in "Exhibit A", FL REHAB was not operating lawfully because ABIERA failed to supervise the business activities of FL REHAB in violation of the Health Care Clinic Act.

74.    Additionally, with respect to dates of service from January 1, 2013 through October 15, 2014, FL REHAB submitted unlawful bills to ALLSTATE because HEMPHILL claimed to wholly own FL REHAB and FL REHAB did not have an AHCA license. During that time period, an ARNP-owned clinic was not eligible to submit bills to an insurer for reimbursement under PIP coverage unless the clinic has an AHCA license. Thus, the bills submitted were unlawful.

75.    At the time the representations were made to ALLSTATE, each Defendant knew that they were false and fraudulent.

76.   Defendants conduct was intentional and gross misconduct.

77.   The Defendants, individually or by and through their agents or representatives, made, acquiesced to, or ratified the above-described misrepresentations to induce ALLSTATE to rely on them.

78.   ALLSTATE justifiably relied on the Defendants' misrepresentations that the bills submitted to ALLSTATE were lawful when, in fact, they were not.

79.   As a direct and proximate result of the above-described misrepresentations, ALLSTATE was damaged in an amount in excess of $75,000, exclusive of attorney's fees, interest and costs.

80.   By virtue of the foregoing, ALLSTATE is entitled to compensatory damages, together with interest and costs, punitive damages, and any other relief the Court deems just and proper.

WHEREFORE, ALLSTATE demands judgment against Defendants for damages, interest, costs, punitive damages, and any other relief this court deems just and proper.

## COUNT II – CONSPIRACY TO COMMIT FRAUD
### (AGAINST ALL DEFENDANTS)

81.   ALLSTATE re-affirms and re-alleges paragraphs 1-80 as if fully set forth herein.

82.   Each of the Defendants in this case are parties to the conspiracy to commit fraud.

83.   Each of the Defendants knew of the scheme and participated in a conspiracy to submit unlawful and fraudulent billing to ALLSTATE, as described more specifically in the general allegations above.

84.   As described more fully in the general allegations above, each Defendant performed an overt act in pursuance of the conspiracy.

85.   As a direct and proximate result of the conspiracy and the acts performed by Defendants pursuant to the conspiracy, ALLSTATE was damaged.

86.   Defendants conduct was intentional and gross misconduct.

WHEREFORE, ALLSTATE demands judgment against Defendants for damages, interest, costs, punitive damages, and any other relief this court deems just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (AGAINST ALL DEFENDANTS)

87.   ALLSTATE re-affirms and re-alleges paragraphs 1-67 as if fully set forth herein.

88.   With regard to the claims identified in "Exhibit A," Defendants, individually or by and through their agents or representatives, negligently made, acquiesced to, or ratified false statements of material fact to ALLSTATE by presenting, directing to be presented and/or accepting the benefits either directly or indirectly from, unlawful billing/charges.  The billing/charges where unlawful due to intentional violations of civil, criminal and administrative statues and rules relating to the provision of medical services, to wit: §§ 400.990, 400.9905, 400.9935, 408.812, 627.736 and 817.234.

89.   Specifically, Defendants, individually or by and through their agents or representatives, actively misrepresented, acquiesced, or ratified the misrepresentation, that HEMPHILL was the whole owner of FL REHAB from October 2, 2009 until October 15, 2014, when, in fact, she was not.  Defendants concealed the true owners of FL REHAB.

90.     Defendants, individually or by and through their agents or representatives, actively misrepresented, acquiesced, or ratified the misrepresentation, that ABIERA was the whole owner of FL REHAB from October 16, 2014 until March 9, 2015, when, in fact, he was not.   Defendants concealed the true owners of FL REHAB.

91.     With respect to dates of service from October 2, 2009 through October 15, 2014 referenced in "Exhibit A", FL REHAB was not operating lawfully because HEMPHILL failed to supervise the business activities of FL REHAB in violation of the Health Care Clinic Act.

92.     With respect to dates of service from October 16, 2014 through March 9, 2015 referenced in "Exhibit A", FL REHAB was not operating lawfully because ABIERA failed to supervise the business activities of FL REHAB in violation of the Health Care Clinic Act.

93.     Additionally, with respect to dates of service from January 1, 2013 through October 15, 2014, FL REHAB submitted unlawful bills to ALLSTATE because HEMPHILL claimed to wholly own FL REHAB and FL REHAB did not have an AHCA license. During that time period, an ARNP-owned clinic was not eligible to submit bills to an insurer for reimbursement under PIP coverage unless the clinic has an AHCA license. Thus, the bills submitted were unlawful.

94.     At the time the misrepresentations were made to ALLSTATE, the Defendants may have believed the representations to be true but they were in fact false.   The Defendants were negligent in making the misrepresentations because they should have known the misrepresentations were false.

95.   The Defendants individually or by and through their agents or representatives, made, acquiesced to, or ratified the above-described misrepresentations to induce ALLSTATE to rely on them.

96.   ALLSTATE justifiably relied on the Defendants' misrepresentations that the claims and charges submitted to ALLSTATE were for services that were lawfully rendered when, in fact, they were not.

97.   As a direct and proximate result of the above-described misrepresentations, ALLSTATE was damaged in an amount in excess of $75,000, exclusive of attorney's fees, interest and costs.

98.   By virtue of the foregoing, ALLSTATE is entitled to compensatory damages, together with interest and costs, and any other relief the Court deems just and proper.

WHEREFORE, ALLSTATE demands judgment against Defendants for damages, interest, costs, and any other relief this court deems just and proper.

### COUNT IV – UNJUST ENRICHMENT
### AGAINST FL REHAB ONLY
### (with regard to claims identified in "Exhibit A")

99.   ALLSTATE re-affirms and re-alleges paragraphs 1-98 as if fully set forth herein.

100.  When ALLSTATE paid PIP benefits based upon what appeared to be facially valid claims listed in "Exhibit A", ALLSTATE justifiably relied upon the representations submitted and reasonably believed it was legally obligated to make such payments.

101.  ALLSTATE's payments constitute a benefit of which FL REHAB is aware.

102.  FL REHAB voluntarily accepted and retained the payments conferred by ALLSTATE.

103.    Under these circumstances, as described in paragraphs 1-_83 above, retention of those benefits by the FL REHAB would be inequitable.

104.    By virtue of the foregoing, ALLSTATE is entitled to damages in an amount in excess of $75,000 which was improperly retained by FL REHAB, and any other relief the Court deems equitable, just and proper.

WHEREFORE, ALLSTATE demands judgment against Defendants for damages, interest, costs, and any other relief this court deems just and proper.

## COUNT V: DECLARATORY RELIEF AS TO NON-COMPENSABILITY OF PENDING BILLS DUE TO DEFENDANTS' VIOLATIONS OF FLORIDA LAW AGAINST FL REHAB ONLY
### (with regard to claims identified in "Exhibit A")

105.    ALLSTATE re-affirms and re-alleges paragraphs 1-104 as if fully set forth herein.

106.    This is an equitable action for declaratory relief pursuant to Florida Statute Chapter 86.

107.    This action for declaratory relief arises out of a dispute and actual controversy between the parties with respect to ALLSTATE's payment obligation for the unpaid portions of bills listed in the attached "Exhibit A."

108.    For reasons set forth in paragraphs 1-89 above, ALLSTATE contends the unpaid bills listed in the attached "Exhibit A" are unlawful bills such that FL REHAB is not entitled to payment of PIP benefits for same.

109.    ALLSTATE is uncertain as to its rights and obligations under the terms of the insurance policies and Florida law as to whether ALLSTATE is responsible for paying for the unpaid bills listed in "Exhibit A."

110.   All interested, adverse parties are before the Court pursuant to proper service of process.

111.   There is a bonafide, actual, present, and practical need for a declaration based on the present ascertained facts and controversy outlined herein and the applicable law and provisions at issue.

112.   There is an actual, present, adverse, and antagonistic interest between ALLSTATE and FL REHAB.

113.   ALLSTATE's and FL REHAB's immunity, power, privilege, and right are dependent upon the aforementioned facts and the law applicable to the aforementioned facts.

114.   The relief sought is not merely seeking legal advice or answers by the Court concerning questions propounded from curiosity.

115.   The facts and circumstances outlined above are a common occurrence and will continue to occur in the future.

WHEREFORE, ALLSTATE respectfully request this Court to enter a Declaratory Order determining the unpaid bills listed in "Exhibit A" are not lawful bills such that ALLSTATE is not contractually or statutorily obligated to pay these unpaid bills. ALLSTATE further requests any supplementary relief or any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

ALLSTATE demands trial by jury on all issues so triable.

Respectfully submitted this ___15th___ day of October, 2015.

_____

**DANIEL A. MARTINEZ, ESQ. (Trial Counsel)**
Florida Bar No.: 0009016
Martinez Denbo, LLC
2935 1st Avenue North, Second Floor
St. Petersburg, FL 33713
(727) 894-3535/office; (727) 502-9621/fax
Primary E-Service: DMartinez@CivilLit.com
Secondary E-Service: ServiceSTP@CivilLit.com

**TAMMY-MARY B. DENBO, ESQ. (Trial Counsel)**
Florida Bar No.: 0163597
Martinez Denbo, LLC
6730 West Linebaugh Avenue, Suite 101
Tampa, FL 33625
(813) 774-5529/office; (813) 774-5413/fax
Primary E-Service: TDenbo@CivilLit.com
Secondary E-Service: DMurray@CivilLit.com and
ServiceTPA@CivilLit.com